# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL     'O'

| Case No. | 2:15-cr-00179(A)-CAS | Date | August 31, 2017 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Julian Andre, Not Present<br>Poonam Kumar |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendant: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Howard Quoc Trinh | NOT | | NOT | Harland Braun | NOT | | X |
| | | | | Robert Shapiro | NOT | | X |

**Proceedings:**     (IN CHAMBERS) - MOTION FOR BOND PENDING APPEAL (Dkt. 150, filed July 28, 2017)

## I.     INTRODUCTION

On April 14, 2015, the Government filed a First Superseding Indictment charging Howard Quoc Trinh ("defendant") with two counts of bribery of a public official, pursuant to 18 U.S.C. § 201(b)(1)(C). Dkt. 24. Following a four-day trial, a jury found defendant guilty of both counts on April 26, 2016. Dkt. 86.

On June 16, 2016, defendant filed two motions, a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(b), dkt. 94, and a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33, dkt. 95. Dkt. 98. On July 18, 2016, the Government filed oppositions to both of defendant's motions. Dkt. 99–100. On August 1, 2016, defendant filed a combined reply. Dkt. 101. On September 12, 2016, the Court denied defendant's motion for judgment of acquittal pursuant to Rule 29 and defendant's motion for a new trial pursuant to Rule 33. Dkt. 104.

On May 17, 2017 the Court held a sentencing hearing and committed defendant to the Bureau of Prisons for 18 months on each of Counts 1 and 2, to be served concurrently, and ordered that defendant be placed on supervised release for two years. Dkt. 143.

On May 23, 2017 defendant appealed his conviction to the Ninth Circuit Court of Appeals. Dkt. 145.

On July 28, 2017, defendant filed a motion for bond pending appeal. Dkt. 150. The Government filed its opposition to defendant's motion on August 7, 2017, dkt. 151, and defendant filed his reply on August 21, 2017, dkt. 152. Defendant filed a supplement to the motion for bond pending appeal, without leave, on August 29, 2017. Dkt. 154.

## II.  BACKGROUND

In March 2015, defendant worked at Seven Brothers Enterprises, a sewing contractor in La Puente, California ("the Company"). The Department of Labor received a complaint that the Company had violated the Fair Labor Standards Act ("FLSA"), and initiated an investigation of the Company. The Department of Labor assigned an investigator, Van Rijsbergen, to lead the investigation of the Company and to determine whether or not the Company had violated the FLSA.

On March 10, 2015, the Department of Labor sent investigators to the Company's warehouse to conduct an unannounced inspection. Investigators met with defendant and conducted interviews with other employees. At trial, Rijsbergen testified that, as of March 10, 2015, the employee interviews had uncovered overtime-pay violations and that there were also record-keeping violations at the Company. On March 10, 2015, Rijsbergen presented defendant with written notice that the Department of Labor believed the Company had violated the FLSA (a/k/a the "hot goods objection"). The written notice explained that shipping goods produced in violation of the FLSA was unlawful and stated that "[a]ny unauthorized movement or shipment of these goods may be subject to legal action by the United States Department of Labor." Defendant signed the notice, which stated that the signatory "fully underst[ood] the ramification[s] . . . and agreed to not move, ship, or allow any movement or shipment of the affected goods." The Department of Labor's Assistant District Director, Skarleth Kozlo, and Regional Director of Enforcement, Richard Longo, testified that they agreed with Rijsbergen's decision to issue the so called "hot goods objection" to the Company. Longo testified that he approved of the notice based on investigators' interviews with Company employees.

The first count charging bribery is based on the events of March 18, 2015. On March 18, 2015, Rijsbergen visited the Company to obtain additional records and met with defendant. Based on his initial March 18, 2015, meeting Rijsbergen believed that defendant had offered him a bribe. Rijsbergen testified that defendant told him, "I don't want to pay the department," and "I want to pay you." Rijsbergen reported the potential bribe offer to supervisors at the Department of Labor, which initiated an undercover operation to record any potential attempted bribes from defendant. On March 18, 2015, Rijsbergen returned to the Company and met defendant while wearing concealed audio and video recording devices. At trial, the jury watched and listened to portions of the recordings Rijsbergen had made. Rijsbergen recorded defendant discussing the Company's employees, saying "they a little bit crazy because a lot of

containers arrive at the same time, so they work a little bit more than regular hour. I have to admit that." Defendant also said, "I want this clean. No violation. . . . I would say to you $10,000 . . . in your pocket." Rijsbergen asked defendant if he wanted the "hot goods objection lifted" and a report saying there were "no violations at all." Defendant answered, "No violations. No violations."

The second count charging bribery is based on the events of March 19, 2015. On March 19, 2015, Rijsbergen met with defendant again and recorded the meeting on concealed audio and video recording devices. The March 19, 2015, recordings showed defendant handing Rijsbergen an envelope containing $3,000. Defendant touched the envelope and said, "we never met . . . we never sat at this table . . . we never had any of this." Rijsbergen told defendant "it is easier to say that we just revisited it, looked at our evidence and there wasn't a violation," to which defendant replied, "[t]hat's what I want to hear."[1]

## III. LEGAL STANDARDS

Defendant now seeks bond bending appeal. For a defendant to obtain release on bond pending appeal, the Court must find:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>     (i) reversal,
>     (ii) an order for a new trial,
>     (iii) a sentence that does not include a term of imprisonment, or
>     (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

---

[1] According to the Government's motion in limine to exclude defense exhibits not produced to the Government, defendant informed the Government on April 11, 2016 that he had a secretly-made audio recording of a conversation between defendant and an unidentified Department of Labor Investigator. Dkt. 59. In his response, defendant contended that he had "secretly recorded" a meeting with the investigator, that he had turned over the recording to the Government, and that defendant need not disclose any other recordings to the Government because the other recordings defendant had referenced were simply the Government investigator's own recordings. Dkt. 68. In the Government's reply, the Government noted that defendant's position on the existence of a secretly-made audio recording was inconsistent. Dkt. 69. Defendant also contends, in its opposition to another motion in limine regarding preclusion of an extortion defense, that defendant secretly taped a conversation with an investigator to "protect himself and preserve a record of the transaction." Dkt. 47.

18 U.S.C. § 3143(b)(1). Section 3143(b)'s requirement that the appeal "is not for purpose of delay" is a separate requirement from the requirement that the appeal "raises a substantial question" likely to result in reversal or a new trial. See United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985) ("[U]nder the 1984 Bail Act a court must find the following to grant bail pending appeal: (1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."). According to the Ninth Circuit, "the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." Id. at 1281. "[A] 'substantial question' is one that is 'fairly debatable,' or 'fairly doubtful.' 'In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous.'" Id. at 1283 (quoting United States v. Giancola, 754 F.2d 898, 901 (9th Cir. 1985)).

## IV. DISCUSSION

In support of the instant motion, defendant asserts eight grounds in his attempt to meet his burden to raise a substantial question likely to result in reversal or a new trial. Those eight grounds are: (1) whether the Court erroneously eliminated "the requirement of lawful conduct by the Government" as an element of the crime of a violation of 18 U.S.C. § 201(b)(1)(C); (2) whether the Court erroneously amended the terms of defendant's indictment in order to eliminate the element of a violation of an official duty; (3) whether the Court erroneously precluded counsel from arguing to the jury that the Government's conduct was illegal; (4) whether the Court should have ruled as a matter of law that Rijsbergen's conduct was illegal; (5) whether the Court's restrictions on closing argument violated defendant's right to counsel; (6) whether defendant's right to present a defense was unreasonably restricted by the Court; (7) whether the Court's ruling undermined defendant's right to present his entrapment defense; and (8) whether the eight-level enhancement for a benefit in excess of $100,000 is appropriate.

### 1. Legality of the Department of Labor's Conduct

Defendant's first five arguments are based on the notion that the Government was required to prove that the Department of Labor acted lawfully. Accordingly, defendant argues that the legality of the Department of Labor's conduct is an element of the charged offense. Yet defendant fails to cite to a single case that supports this argument. The Court relied on United States v. Daniels, 17 F.2d 339, 343 (9th Cir. 1927) when it concluded that the indictment did not require the Government to prove whether dismissing the investigation and the "hot goods

objection" would have been inconsistent with Rijsbergen's lawful duties. In turn, defendant argues that Daniels is not applicable to this case, as it involves a prior version of the statute under which a defendant was convicted and it involves dissimilar facts. However, the Court finds that Daniels is binding precedent, as the relevant language of the statute in that case is nearly identical to the current version of § 201(b)(1), and the underlying facts and arguments are analogous to those at issue before the Court.

The court in Daniels interpreted an early version of the statute charged here, and the indictment charged the defendant with bribing a public official to terminate further investigation of defendant's liquor permits. As in this case, the Government had acted to halt defendant's business while investigating the defendant's company. Defendant's company traded in liquors, and the indictment alleged that the public official was charged with investigating whether persons with liquor permits were complying with applicable regulations. Id. at 342. The defendant argued that he had valid liquor permits, and that the investigation and freeze of the liquor withdrawals were unlawful. Id. at 341. Like the defendant here, the defendant in Daniels argued "that under the terms of the indictment and the evidence adduced to sustain it [the official] was bribed only to induce him to do that which it was illegal for [the official] to refuse to do." Id. at 342. Yet the Ninth Circuit Court of Appeals rejected this argument and affirmed defendant's conviction based on statutory language that is *still present* in sub-section (C) of 18 U.S.C. § 201(b)(1):

> [The public officer] undoubtedly had authority to investigate permits theretofore issued . . . it is clear that under the indictment there was evidence to prove that money was offered and paid to induce [the officer's] decision on a matter which by law was 'before him in his official capacity,' *and to induce him to omit to do an act 'in violation of his lawful duty.'* It is generally held that to constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced be right or wrong. 'Nor is a public officer to be held acquitted of the charge of bribery because that which he agreed to accept as a bribe for doing, was no more than he was legally bound to do.'

Daniels, 17 F.2d at 343 (emphasis added). Defendant cites no authority differentiating Daniels from the facts at issue here. Accordingly, like the Daniels court concluded, the indictment in this case did not require the Government to prove whether dismissing the investigation and the "hot goods objection" would have been inconsistent with Rijsbergen's lawful duties. Daniels is on point, and it forecloses the majority of defendant's arguments on appeal.

In addition, whether Rijsbergen acted lawfully when he issued the "hot goods objection" is immaterial to the language of the elements of § 201(b)(1)(C). Sub-section (C) of 18 U.S.C. § 201(b)(1) only requires the Government to prove defendant's *state of mind*, i.e., that defendant

intended to cause a violation of Rijsbergen's duties. Whether Rijsbergen acted lawfully is immaterial to defendant's state of mind. A person can be found guilty of bribery even if they are mistaken in their belief about the official's lawful duties. See Daniels v. United States, 17 F.2d 339, 343 (9th Cir. 1927); United States v. Gjieli, 717 F.2d 968, 976 (6th Cir. 1983) ("Congress enacted § 201(b) to provide a broad deterrent . . . . The deterrent value . . . is the same regardless of whether or not the acts to be accomplished are within the scope of the actual lawful duties of the bribed public official and regardless of whether the briber has correctly perceived the precise scope of the official's lawful duties").

Since the legality of Rijsbergen's actions is an immaterial issue, then accordingly the legality of the conduct thought to be influenced is also irrelevant to defendant's defense. Prior to defense counsel's closing argument, the Court explained its ruling preventing defense counsel from arguing that the "hot goods objection" was illegal: "the state of the evidence does not go to the legality of [the hot goods objection]. The state of the evidence goes to what your client believed were his alternatives and why he did what he did." Whether or not the "hot goods objection" was legal is a question of law and is not a required element of the charges defendant faced. Therefore, the Court's ruling did not deprive defendant of a jury determination on each element of his offenses. Nor was the Court required to permit defendant to argue an irrelevant legal contention to the jury. See United States v. Doe, 705 F.3d 1134, 1149 (9th Cir. 2013) ("prevent[ing defendant] from arguing incorrect statements of law . . . [is] well within the court's discretion"). Defendant's perception of the "hot goods objection" could have been relevant insofar as it related to defendant's state of mind, but the Court did not preclude defendant from arguing his own perceptions of the "hot goods objection."

Finally, cases in sister circuits support the notion that it is not necessary for the Government to prove that it would have been improper for the public official to perform the act that was the subject of the bribe. See United States v. Orenuga, 430 F.3d 1158, 1165–66 (D.C. Cir. 2005); United States v. Quinn, 359 F.3d 666, 675 (4th Cir. 2004); United States v. Jannotti, 673 F.2d 578, 601 (3d Cir. 1982); United States v. Jacobs, 431 F.2d 754, 759–60 (2d Cir. 1970); Kemler v. United States, 133 F.2d 235, 238 (1st Cir. 1942). In sum, defendant fails to provide legal authority that supports his claim that the Government was required to prove that the Department of Labor acted lawfully. Furthermore, the legality of Rijsbergen's conduct has no bearing on § 201(b)(1)(C)'s required element of defendant's state of mind. Thus, defendant has failed to meet his burden of demonstrating his appeal raises a "substantial question of law or fact likely to result in" reversal or a new trial.[2] 18 U.S.C. § 3143(b)(1).

---

[2] The Court has read and considered defendant's supplement briefing to the instant motion. Dkt. 154. The Court's conclusions as to (1) whether the Court erroneously precluded counsel from arguing to the jury that the Government's conduct was illegal and as to (2) whether the

### 2. Defendant's Use of Transcripts of the Undercover Recordings

During defendant's testimony, the Court required defendant to replay any portions of Rijsbergen's recordings that he wished to present to the jury. Defendant argues that he was deprived of his right to testify because the Court did not permit him to testify from the transcripts of Rijsbergen's recordings. However, defendant cites no authority for his apparent contention that the Court was obligated to let defendant read aloud from an evidentiary aid rather than replay the actual evidence for the jury, and defendant fails to identify specific testimony that was precluded or restricted because of the Court's ruling.

"[R]estrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." Rock v. Arkansas, 483 U.S. 44, 55–56 (1987). Arbitrary rules are those that "excluded important defense evidence but that did not serve any legitimate interests." Holmes v. S. Carolina, 547 U.S. 319, 325 (2006). Here, the Court's ruling did not limit the scope of evidence defendant could present. Defendant was permitted to testify regarding the content of Rijsbergen's recordings and defendant did so. Accordingly, the Court rejects defendant's contention that the Court denied him his right to testify and present evidence in his defense. The jury was instructed that Rijsbergen's recordings were evidence and that the transcripts of those recordings were not. Dkt. 80 Instr. 13. The Court's ruling helped ensure that the jury considered the actual evidence, rather than relying on a document that is not evidence.

### 3. Defendant's Right to Present an Entrapment Defense

Defendant argues that the Court's ruling denied him his right to counsel and his right to present an entrapment defense. Defendant contends that the illegality of the conduct of Rijsbergen was the heart of the defense of entrapment, yet the Court prohibited defendant's counsel from arguing to the jury that the lifting of the ban on shipment and the request for a clean report did not constitute a violation of the bribery statute. However, defendant concedes that the Court properly instructed the jury that the Government was required to prove that defendant was not entrapped, and defendant stipulated to the Court's entrapment jury instruction, which he does not dispute was legally correct. Dkt. 150 at 17.

An entrapment defense, like the intent element of the crime, depends upon what caused defendant to offer Rijsbergen bribes. Defendant presented evidence that he viewed the "hot goods objection" as involuntary and that the investigation of the Company placed pressure upon him. The Court did not prevent defendant from arguing those facts to the jury and their effect

---

Court erroneously eliminated "the requirement of lawful conduct by the Government" as an element of the crime of a violation of 18 U.S.C. § 201(b)(1)(C) remain the same, for the reasons stated in the Court's analysis.

on defendant's state of mind.  However, the lawfulness of the "hot goods objection" is not connected to defendant's state of mind.  Accordingly, the lawfulness of the "hot goods objection" is not connected to his entrapment defense.

Defense does not cite to any case law that supports this argument that the Court's ruling denied him his right to counsel and right to present an entrapment defense.  Therefore, defendant has not met his burden of establishing that this issue is "fairly debatable" or "fairly doubtful."  See Handy, 761 F.2d at 1283.

**4.     Defendant's Challenge to the Guidelines Calculation**

Defendant argues that, on appeal, he will challenge the eight-level enhancement the Court applied under U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(E).  Yet defendant neither cites case law nor points to Guideline language that shows the Court's calculations were erroneous.  Instead, he argues that the Department of Labor acted illegally and that the writers of the Guidelines would have indicated if they had intended for a defendant to be punished for an illegal determination of back wages.

The Court's Guidelines calculations were consistent with the plain language of § 2C1.1(b)(2).  The undercover recordings, presented at trial, establish that the "benefit to be received" at the time of the bribe was $100,000, which comports with the appropriate way to calculate the § 2C1.1(b)(2) enhancement under the Guidelines—namely, looking at the benefit "to be received" *at the time the bribe took place*.  See CR 112 at 2–5.

Defendant's arguments do not meet his burden under § 3143(b)(1), and defendant's challenge to the Guidelines calculations therefore does not raise a "substantial question" on appeal.

**5.     Delayed Resolution**

Defendant fails to establish that any of the issues he intends to raise on appeal are "fairly debatable" or "fairly doubtful," for the reasons stated above.  Furthermore, defendant fails to cite to relevant case law that directly supports his arguments he intends to raise on appeal.  These circumstances suggest that the primary purpose of his appeal is to delay.  Regardless of the fact that defendant received a below guidelines sentence of 18 months' imprisonment, the length of this sentence does not lessen defendant's burden under § 3143(b)(1), or require the Court to grant defendant bail while he pursues issues on appeal that he has not established to be "fairly debatable."

## V. CONCLUSION

For all of the foregoing reasons, the Court concludes that defendant has failed to raise a substantial question likely to result in reversal or new trial. Therefore, the Court **DENIES** defendant's motion for bond pending appeal.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Deputy Clerk | CMJ |

Cc:   Pretrial Services

U.S. Probation